# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR M. VELEZ,
*Plaintiff,*

v.                                        No. 3:18-cv-1053 (VAB)

TOWN OF STRATFORD,
*Defendant.*

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Victor M. Velez ("Plaintiff" or "Lieutenant Velez") has sued the Town of Stratford (the "Town") under 42 U.S.C. § 1981 for age and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"),  the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-57 *et seq.* ("CFEPA").

The Town has moved for summary judgment.

For the following reasons, the Town's motion for summary judgment is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Lieutenant Velez is a Lieutenant with the Stratford Police Department. Pl.'s Local 56(a)2 Statement of Facts in Opp'n to Summ. J. ¶ 1, ECF No. 35 (Aug. 29, 2019) ("Pl.'s SMF"). Lieutenant Velez's race is Hispanic, and his date of birth is March 18, 1966. *Id.* ¶ 2. He has a B.S. in Public Administration from Charter Oak State College, and a Master of Public Administration from the University of New Haven. *Id.* at Add'l Material Facts ¶ 6.

The Stratford Police Department ("Stratford P.D.") is an administrative agency of the Town, a political subdivision of the state of Connecticut. *Id.* ¶ 3. The police chief is the executive head of the Stratford P.D. *Id.* ¶ 4.

On March 9, 1999, the Town hired Lieutenant Velez to serve as a police officer with the Stratford P.D. *Id.* ¶ 5. From that date until January 7, 2006, Lieutenant Velez served as a police officer assigned to the Patrol Division. *Id.* ¶ 6. On January 7, 2006, Lieutenant Velez was promoted to Corporal, and served as a senior officer in the Patrol Division. *Id.* ¶ 7. On January 7, 2008, Lieutenant Velez was promoted to Detective and assigned to investigate financial crimes and incidents of suspected arson. *Id.* ¶ 8. On June 2, 2008, he was promoted to Sergeant, and worked on all three shifts of the Patrol Division for the next eight years. *Id.* ¶ 9. On January 10, 2016, Lieutenant Velez was promoted to Lieutenant and assigned as Shift Commander of the Patrol Division's midnight shift. *Id.* ¶ 10.

On July 5, 2016, then-Deputy Chief Joseph McNeil sent an e-mail to all police lieutenants advising them of vacancies in the Traffic and Training Lieutenant positions. *Id.* ¶ 11. He requested that those interested respond by July 7, 2016, and Lieutenant Velez indicated his interest on July 6, 2016. *Id.* ¶¶ 11-12.

On July 11, 2016, Mr. McNeil became Chief of Police, with the discretion to assign and reassign the position of Training Lieutenant, along with the other administrative Lieutenant positions. *Id.* ¶¶ 13-14, 32. Chief McNeil assigned Lieutenant Velez to the position of Training Lieutenant, which is one of three administrative lieutenant positions in the Stratford P.D. *Id.* ¶¶ 15-16. At the time of this appointment, Lieutenant Velez was also engaged in a private business as a real estate appraiser, and has continued to be for a number of years. *Id.* ¶ 21.

Along with the Traffic and Records Lieutenants, "the Training Lieutenant [has] flexible hours . . . ." Ex. A: Agreement Between the Town and Stratford Police Local #407 at 11, Art. 3 § 4(k), ECF No. 31-3 (effective July 1, 2017 to June 20, 2021) ("CBA"). Despite the collective bargaining agreement ("CBA") allowing for a flexible schedule, the Town contends that "the administrative positions generally work a day schedule Monday through Friday from 8:00 a.m. to 4:00 p.m., and every third week on Saturday and Sunday with two days off during the week." Local Rule 56(a)1 Statement of Undisputed Material Facts ¶ 17, ECF No. 31-2 (July 26, 2019) ("Def.'s SMF").

As Training Lieutenant, Lieutenant Velez "was responsible for the training of new recruits, and the recertification of all sworn police department personnel, as well as compiling training data for daily and annual reporting." Pl.'s SMF ¶ 18. Lieutenant Velez served in this role for approximately sixteen months until November 13, 2017, but alleges that "it is customary that those appointed to administrative positions serve three years." *Id.* ¶ 19.

Captain Frank Eannotti supervised Lieutenant Velez directly, while he was Training Lieutenant. *Id.* ¶¶ 22-23. The Town contends that Lieutenant Velez has missed scheduled meetings, which Lieutenant Velez denies. *Compare* Def.'s SMF ¶ 24, *with* Pl.'s SMF ¶ 24.

On October 25, 2017, Chief McNeil, Captain Eannotti, Captain Budd, and Deputy Chief Popik met to discuss the Training Lieutenant positions and agreed that Lieutenant Velez would be reassigned, although Lieutenant Velez denies that "he was too distracted to effectively perform the Training Lieutenant functions at this time," as the Town claims. *Compare* Def.'s SMF ¶ 25, *with* Pl.'s SMF ¶ 25.

On October 26, 2017, Deputy Chief Popik sent an e-mail to all Stratford Police Department Lieutenants advising that the Training Lieutenant position would be vacant

beginning in November 2017 and requesting those interested to respond by November 3, 2017. Pl.'s SMF ¶ 26. That same day, Lieutenant Anthony Rhew responded indicating his interest. *Id.* ¶ 27. Lieutenant Velez alleges that "Chief McNeil took an overt step to facilitate the appointment of Lt. Rhew to the Training Lieutenant position by convincing Lt. Wrigley to forego responding to Popik's communication." *Id.* ¶ 26 (citing Ex. 1: Velez Aff. ¶ 21, ECF No. 35-1 (Aug. 29, 2019)). Lieutenant Rhew was the only Lieutenant who responded to Deputy Chief Popik's e-mail posting. *Id.* ¶ 28.

Lieutenant Velez was subsequently reassigned to Shift Commander of the midnight Patrol Shift, effective November 7, 2017, and Lieutenant Rhew was assigned to Training Lieutenant, effective November 13, 2017. *Id.* ¶¶ 29-30; *id.* at Add'l Material Facts ¶ 7. Lieutenant Velez's "reassignment did not result in a change of rank or pay." *Id.* ¶¶ 31, 39. Lieutenant Velez "receives more in actual compensation" in his new position as Shift Commander, and he has "not lost educational opportunities as a result of his reassignment." *Id.* ¶¶ 40-41.

The CBA provides that:

> The parties recognize that the principal factors in the Lieutenant and Captain Assignments are the efficiency and integrity of the Police Department. Such assignments, by the Chief of Police, may be subject to the grievance procedure; provided, however, that the decision at the Town's Mayor or designee step shall be final.
>
> At any time, regardless of the Shift selection procedure, the Chief of Police may reassign any Lieutenant . . . .

CBA at 13, Art. 3 § 4(B). Neither Lieutenant Velez nor his union filed a grievance regarding Lieutenant Velez's reassignment. *Id.* ¶ 34 (denied "that this is a material fact").

In February 2019, Captain Popik met with all Stratford Police Department Lieutenants regarding shift and assignment bids. *Id.* ¶ 35 (denied "that this is a material fact"). At that time,

Lieutenant Velez was offered an administrative position as either Records or Traffic Lieutenant. *Id.* ¶ 36 (same). On February 11, 2019, Lieutenant Velez declined that offer. *Id.* ¶ 37 (same).

Lieutenant Velez "is not seeking reinstatement to the position of Training Lieutenant." *Id.* ¶ 38 (denied "that this is a material fact").

According to Lieutenant Velez, the Training Lieutenant position is a "prestigious assignment, substantially more prestigious" than the role of Shift Commander of the midnight Patrol Shift. *Id.* at Add'l Material Facts ¶ 2. Additionally, as compared to the "non-flexible rotating schedule" of the Shift Commander, the Training Lieutenant's "flexible day shift work schedule provided the plaintiff with a sense of normalcy and a better quality of life with his family." *Id.* at Add'l Material Facts ¶¶ 3-4. Lieutenant Velez alleges that he has an "unblemished personnel record," *id.* at Add'l Material Facts ¶ 5, but that on his removal from the Training Lieutenant position, he was "informed that he was not a 'good fit' for any of the other administrative positions" in the Stratford P.D. *Id.* at Add'l Material Facts ¶ 8.

Lieutenant Velez alleges that during his approximate sixteen-month tenure as Training Lieutenant, Chief McNeil "never met with [him] to discuss, counsel, and/or warn [him] that he was not performing his duties as Training Lieutenant in a satisfactory manner and that he was in danger of being removed from the Training Lieutenant position." *Id.* at Add'l Material Facts ¶ 13. Lieutenant Velez's shift changes and swaps were allegedly all approved by his supervisor, as indicated by the "approved" notation on his 2017 Time Off Activity Report. *Id.* at Add'l Material Facts ¶ 19 (citing Ex. D: Time Off Activity Report, ECF No. 31-3 at 21-24).

Lieutenant Velez alleges that he was replaced by "a substantially younger, non-Hispanic Lieutenant, Anthony Rhew." *Id.* at Add'l Material Facts ¶ 9. Lieutenant Velez was allegedly "fully qualified to perform the duties of the Training Lieutenant . . . and performed those duties

in a most capable manner when he served in that position." *Id.* at Add'l Material Facts ¶ 10. He alleges that Chief McNeil's asserted reasons for removing him from the Training Lieutenant position "are based solely on McNeil's self-serving, uncorroborated affidavit, without any supporting documentary evidence," and that "[c]ontemporaneous documentary evidence supporting McNeil's reasons for removing [Lieutenant Velez] . . . are non-existent." *Id.* at Add'l Material Facts ¶¶ 11-12; *see also id.* at Add'l Material Facts ¶ 14 ("The defendant has only offered the self-serving affidavits of McNeil and Eannotti, without any contemporaneous records that document the plaintiff's supposed ineffective performance as Training Lieutenant[.]").

### B. Procedural History

On June 20, 2018, Lieutenant Velez filed his Complaint against the Town alleging unlawful employment discrimination on the basis of race and age. Compl., ECF No. 1 (June 20, 2018).

On August 22, 2018, the Town filed its Answer with affirmative defenses and a jury demand. Answer, ECF No. 9 (Aug. 22, 2018).

On July 26, 2019, the Town moved for summary judgment. Def.'s Mot. for Summ. J., ECF No. 31 (July 26, 2019) ("Def.'s Mot."); Mem. of Law in Supp. of Def.'s Mot., ECF No. 31-1 (July 26, 2019) ("Def.'s Mem."); Local Rule 56(a)1 Statement of Undisputed Material Facts, ECF No. 31-2 (July 26, 2019) ("Def.'s SMF").

On August 29, 2019, Lieutenant Velez filed his opposition. Mem. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 34 (Aug. 29, 2019) ("Pl.'s Opp'n"); Pl.'s Local 56(a)2 Statement of Facts in Opp'n to Summ. J., ECF No. 35 (Aug. 29, 2019) ("Pl.'s SMF").

On March 4, 2020, the Court held a hearing on the motion for summary judgment. Minute Entry, ECF No. 38 (Mar. 4, 2020).

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III.  DISCUSSION

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA prohibits workplace discrimination on the basis of age. 29 U.S.C. §§ 621(b), 623(a).

For his reassignment from the position of Training Lieutenant to Shift Commander of the midnight Patrol Shift, Lieutenant Velez has sued the Town for employment discrimination on the

basis of race in violation of Title VII; on the basis of age in violation of the ADEA; and on the basis of both race and age in violation of the CFEPA. The Town has moved for summary judgment on all claims, arguing that (1) Lieutenant Velez cannot establish a *prima facie* case of discrimination because "he did not satisfactorily perform in that position and his reassignment was not an adverse employment action"; (2) the Town had a legitimate, nondiscriminatory reason for his reassignment; and (3) there is no evidence the Town's proffered reason was pretextual.

Because courts analyze claims under the CFEPA using the same standards as Title VII, the Court will focus its analysis on the federal claims. *See Jackson v. Water Pollution Control Auth. of City of Bridgeport*, 278 Conn. 692, 705 n.11 (2006) ("We look to federal law for guidance in interpreting state employment discrimination law, and analyze claims under [the CFEPA] in the same manner as federal courts evaluate federal discrimination claims." (internal citation omitted)). In addition, ADEA claims "are analyzed under the same framework as claims brought pursuant to Title VII." *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (citation omitted).

### A. Lieutenant Velez's *Prima Facie* Case of Discrimination

Under Title VII, claims of employment discrimination and retaliation are governed by the burden shifting analysis the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted) (analyzing Title VII sex discrimination claims); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177–78 (2d Cir. 1996) (in the context of a Title VII retaliation claim). Under this burden-shifting framework, the plaintiff employee must first present a *prima facie* case by establishing:

> (1) that he belonged to a protected class; (2) that he was qualified
> for the position he sought; (3) that he suffered an adverse
> employment action; and (4) that the adverse employment action
> occurred under circumstances giving rise to an inference of
> discriminatory intent.

*Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251-52 (2d. Cir. 2014) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

After the plaintiff meets this "initial burden," then it becomes the employer's burden to establish a legitimate nondiscriminatory reason for its actions; "the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Id.* at 251 (citing *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999)); *see also Sista v. CDC Ixix N.A., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (emphasizing "admissible evidence" in a disability discrimination case (citation omitted)); *Terry v. Ashcroft*, 336 F.3d 128, 137–38, 140–41 (2d Cir. 2003) (in the Title VII race and gender discrimination and retaliation contexts (citation omitted)).

The Town does not dispute that Lieutenant Velez belongs to a protected class for either his age or race discrimination claims; however, the Town argues that Lieutenant Velez has otherwise failed to meet the second, third, and fourth prongs of establishing a *prima facie* case of employment discrimination.

### a. Lieutenant Velez's Qualification for Training Lieutenant Position

The Town argues that Lieutenant Velez fails to establish the second prong of the burden-shifting framework, because although Lieutenant Velez "is a good police officer and was qualified for the Training Lieutenant position when it was assigned to him, . . . he was not performing satisfactorily in the role." Def.'s Mem. at 14. The Town contends that Lieutenant Velez "changed his shift excessively" during his tenure, "[d]espite the need for the Training

Lieutenant to be available during the day shift." *Id.* at 15. The Town also submits that Lieutenant Velez "was sometimes absent from Wednesday staff meetings," which "meant things were not timely completed or fell to others." *Id.*

According to the Town, "the last straw came on October 25, 2017, when the Police Department implemented a switch from an analog to a digital radio system," and on the day of the switch, Lieutenant Velez called out sick. *Id.* at 16. Lieutenant Velez's supervisor, Captain Eannotti, and Chief McNeil "were not satisfied and felt that given the competing demands on his time, plaintiff was not being effective in the Training Lieutenant position at that time." *Id.* As a result, the Town argues that Lieutenant Velez "cannot demonstrate he was satisfactorily performing as a Training Lieutenant," and thus fails to establish a *prima facie* case of employment discrimination. *Id.*

In response, Lieutenant Velez submits that "the evidence establishes that the [Town] had determined that [he] met the qualifications for the position of Training Lieutenant when it appointed him to the position." Pl.'s Opp'n at 16. Lieutenant Velez argues that the Town has conflated his burden to establish a *prima facie* case "with the second stage of the analysis where the defendant has the burden of articulating a legitimate non-discriminatory reason for removing the plaintiff from the Training Lieutenant position." *Id.* at 17. As Lieutenant Velez understands the law, "the qualification prong, as to which the initial burden lies on plaintiff, cannot be transformed into a requirement that the plaintiff anticipate and disprove an employer's explanation that inadequate ability or performance justified the job action at issue." *Id.* at 18 (citation omitted).

The Court agrees.

The Second Circuit has "long emphasized that the qualification prong [of *McDonnell Douglas*'s burden-shifting framework] must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001); *see also Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978) (holding that the plaintiff "need only show that his performance was of sufficient quality to merit continued employment . . . [and] need not, and indeed cannot, disprove as a cause of his discharge a source of dissatisfaction of which he is unaware" (citation omitted)), *cert. denied*, 439 U.S. 984 (1978).

Furthermore, "when, as in this case, the employer has retained the plaintiff for a significant period of time and promoted her, the strength of the inference that she possesses the basic skills required for her job is heightened." Pl.'s Opp'n at 18. In this case, Lieutenant Velez began working for the Stratford P.D. in March 1999, Pl.'s SMF ¶ 5, was assigned to Training Lieutenant in July 2016, *id.* ¶¶ 15-16, and served in that position until he was reassigned in November 2017, *id.* ¶ 19. Consequently, the inference of "minimal qualification" is met. *Gregory*, 243 F.3d at 696; *see Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) ("[The plaintiff] only needs to demonstrate that she 'possesses the basic skills necessary for performance of [the] job.'" (quoting *Powell*, 580 F.2d at 1155)).

Accordingly, the Court finds that Lieutenant Velez has met his burden under the second prong of *McDonnell Douglas*, and has established that there is no genuine dispute of material fact that he was qualified for the position of Training Lieutenant.

### b. Adverse Employment Action

The Town next argues that Lieutenant Velez "cannot demonstrate he suffered an adverse employment action." Def.'s Mem. at 17. The Town emphasizes that there was "no change in

[Lieutenant Velez's] rank or pay as a result of his reassignment," nor was there "a difference in [his] status or prestige." *Id.* at 18. In fact, the Town submits that Lieutenant Velez "had more responsibility or authority as a Shift Commander," while the "Training Lieutenant position is a support role." *Id.* The Town contends that Lieutenant Velez cannot "proffer objective indicia of material disadvantage," *id.* at 19 (citation omitted), and that his only supporting evidence for the alleged higher prestige of the Training Lieutenant position is his subjective belief, *id.* at 20. As a result, the Town concludes that "[c]onclusory statements based on subjective belief, without any objective evidence to support them, are insufficient as a matter of law." *Id.* at 21.

In response, Lieutenant Velez contends that his transfer was a demotion that negatively altered the terms and conditions of his employment. Pl.'s Opp'n at 19. According to Lieutenant Velez, the Training Lieutenant oversees the Training Division, which has more duties and responsibilities than Shift Commander of the Patrol Division's midnight shift. *Id.* at 20-21. Furthermore, Lieutenant Velez emphasizes that "in view of [his] advanced education in public education," his assignment to the Training Lieutenant position, which had increased administrative responsibility, was "a significant advancement in [his] career in public administration." *Id.* at 21. As a result, "his removal from the position constituted an adverse employment action." *Id.*

The Court disagrees.

An adverse employment action is any action that causes the plaintiff to "endure[ ] a materially adverse change in the terms and conditions of employment . . . [and a] materially adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." *Gutierrez v. City of N.Y.*, 756 F. Supp. 2d 491, 506 (S.D.N.Y. 2010) (citations and internal quotation marks omitted). Termination of employment or discharge from employment

therefore are adverse employment actions. *Id.* Termination, however, is not the only adverse employment action recognized, others include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "To be materially adverse[,] a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya*, 202 F.3d at 640 (citation and quotation marks omitted).

In order to prevail and establish that there is no genuine dispute of material fact that his reassignment was an adverse employment action, Lieutenant Velez must show that reassignment from Training Lieutenant to Shift Commander "result[ed] in a change in responsibilities so significant as to constitute a setback to [his] career." *Id.* at 641 (2d Cir. 2000) (explaining the proposition in *Rodriguez v. Bd. of Educ. of Eastchester Union Free Sch. Dist.*, 620 F.2d 362 (2d Cir. 1980)) (other citations omitted). Despite his allegation that his reassignment "resulted in a substantial diminishment in his standing [in] the hierarchy of the Stratford Police Department," *see* Pl.'s Opp'n at 21, Lieutenant Velez has not produced any record evidence that the Shift Commander of the midnight Patrol Division is a demotion from the Training Lieutenant position.[1] "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (internal citation and quotation marks omitted).

---

[1] In fact, at oral argument, Lieutenant Velez conceded that in order to be promoted to the next rank, Captain, he would have to take a civil service examination.

"A plaintiff can show an adverse employment action where, even though she was transferred to a job with the same rank and pay, the new position was arguably less prestigious or entailed diminished responsibilities." *Williams v. Alliance Nat'l Inc.*, 24 F. App'x 50, 53 (2d Cir. 2001) (summary order) (citing *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 21 (2d Cir. 1996)). Here, Lieutenant Velez relies on *de la Cruz*, claiming similarly that his transfer, or reassignment, was a move from an "'elite' division . . . , which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth." 82 F.3d at 21. The Town maintains, however, that "the two [positions] are equal in status." *Id.*

To the extent that Lieutenant Velez argues the reassignment took away "the unique opportunity to implement [his] course knowledge" in public administration, Velez Aff. ¶ 25, that could constitute a "radical change in the nature of the work [Lieutenant Velez] was called upon to perform." *See Rodriguez*, 620 F.2d at 366 (finding an adverse employment action where a junior high school teacher with twenty years of specialized art experience and study was transferred to the elementary school, which had "profoundly different" art programs).

In this case, however, Lieutenant Velez's "reliance on [*de la Cruz*] . . . is misplaced," *Mudholkar v. Univ. of Rochester*, 229 F.3d 1136, 2000 WL 1476576, at *3 (2d Cir. 2000) (summary order), because he relies only on his own conclusions as evidence of a demotion, and "[s]uch subjective, personal disappointments do not meet the objective indicia of an adverse employment action," *R. H. Donnelley*, 368 F.3d at 128. In fact, Lieutenant Velez offers no evidence beyond generally opining that the Training Lieutenant position was "undoubtedly a significant advancement in [his] career in public administration." Pl.'s Opp'n at 21. Consequently, Lieutenant Velez has not created a genuine dispute of material fact that his

reassignment was "materially adverse," or that it created a "materially significant disadvantage." *See Galabya*, 202 F.3d at 641 ("Appellant has not produced evidence that the transfer was to an assignment that was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement."); *Mudholkar*, 2000 WL 1476576, at *3 ("Here, [plaintiff] presented *no* evidence of any deficit in prestige or opportunity." (emphasis in original)); *cf. Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) ("Although this transfer did not affect his wages or benefits, it resulted in a less distinguished title and significantly diminished material responsibilities, and therefore constituted an adverse employment action." (citations and quotation marks omitted)).

At the motion for summary judgment stage, Lieutenant Velez must bring forth admissible evidence regarding the perception of the positions and "not rest upon [] mere allegations or denials." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (quoting Fed. R. Civ. P. 56(e)). Here, he merely provides his own subjective belief that the "administrative lieutenant positions . . . are prestigious and provides [sic], in the flex schedules, an exceptional benefit." Velez Aff. ¶ 26. It is undisputed, however, that "the reassignment did not result in a change of rank or pay, " Pl.'s SMF ¶¶ 31, 39, nor has Lieutenant Velez "lost educational opportunities as a result of his reassignment," *id.* ¶ 41, or an opportunity for promotion. Significantly, Lieutenant Velez "receives more in actual compensation" due to his reassignment from Training Lieutenant to Shift Commander. *Id.* ¶ 40.

As a result, Lieutenant Velez has not created a genuine dispute of material fact that he suffered a "materially adverse change in the terms and conditions of employment," *Galabya*, 202 F.3d at 640, and thus fails to establish a *prima facie* case of employment discrimination.

Accordingly, the Town's motion for summary judgment on Lieutenant Velez's

discrimination claims will be granted.[2]

**B. Whether the Town's Legitimate, Nondiscriminatory Reason for Lieutenant Velez's Reassignment was Pretextual**

Even assuming Lieutenant Velez could establish a *prima facie* case of age or race discrimination, the Court otherwise would dismiss this case.

The Town submits that it has articulated a legitimate, nondiscriminatory reason for reassigning him. Def.'s Mem. at 25. According to the Town, Chief McNeil "reassigned the plaintiff because of his frequent unavailability during regularly schedule[d] shift[s] and apparent distraction from duties due to outside commitments that competed for his time." *Id.* at 25-26. In support, the Town cites to the affidavits of Chief McNeil and Captain Eannotti. *Id.* at 25-27; *see also id.* at 4-8 (detailing Lieutenant Velez's perceived shortcomings during his tenure as Training Lieutenant, and how Chief McNeil eventually decided to reassign him). As a result, because Chief McNeil "exercised his discretion in the best interests of the department," discretion provided for under the collective bargaining agreement, the Town submits that the burden now shifts to Lieutenant Velez to prove that the reason "is a pretext for illegal discrimination." *Id.* at 26-27.

According to the Town, Lieutenant Velez cannot establish that the Town's reason for reassigning him is a pretext for race discrimination, because he has no direct or indirect evidence of pretext. *Id.* at 27-28. In addition, the Town contends that Lieutenant Velez "cannot point to any discriminatory comments regarding his age or race, only that his replacement was younger

---

[2] The Town also argues that "[a] generalized feeling that age or race was a motivating factor in an adverse employment action is insufficient to defeat a motion for summary judgment." Def.'s Mem. at 21. "Because a discrimination claim is necessarily implausible absent such an allegation, [the Court] need not reach the question of whether any hypothetical injury could plausibly have been attributed to discriminatory animus." *Chung v. Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) (summary order).

and not Hispanic." *Id.* at 29. The Town concludes that Lieutenant Velez's "age and race had nothing to do with the Chief's decision, and Plaintiff cannot demonstrate otherwise." *Id.* at 30.

In response, Lieutenant Velez submits that the "lack of contemporaneous records documenting deficiencies in the plaintiff's work performance as Training Lieutenant is evidence of pretext." Pl.'s Opp'n at 23 (footnote omitted). In addition to these "after-the-fact rationalizations" for Lieutenant Velez's reassignment, Lieutenant Velez contends that Chief McNeil "never communicated with [him] in any manner to discuss these alleged shortcomings." *Id.* (citation omitted). Lieutenant Velez argues that a jury could find that the Town "purposely favored a Caucasian employee over the plaintiff when it replaced the plaintiff with Rhew as the Training Lieutenant." *Id.* at 24. According to Lieutenant Velez, this case "involves an assessment of the credibility of witnesses and the resolution of competing inferences that can be drawn from disputed facts," which makes the case inappropriate for resolution on summary judgment. *Id.* at 27.

The Court disagrees.

"Title VII is not an invitation for courts to sit as a super-personnel department that reexamines employers' judgments." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73 (2d Cir. 2015) (citations and quotation marks omitted). Under the *McDonnell Douglas* burden-shifting framework, even after the plaintiff establishes a *prima facie* case of discrimination, the plaintiff still carries the burden of showing that the defendants' nondiscriminatory reasons were pretextual. *See* 411 U.S. at 804. The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Lieutenant Velez has not met that burden here.

Lieutenant Velez admits that Chief McNeil, as the Chief of Police, has the sole discretion to assign and reassign the position of Training Lieutenant. Pl.'s SMF ¶¶ 13-14, 32; *see also* CBA at 13, Art. 3 § 4(B) ("At any time, regardless of the Shift selection procedure, the Chief of Police may reassign any Lieutenant."). Chief McNeil "made the decision to reassign Lt. Velez from the Training Lieutenant position because [he] felt [Lieutenant Velez] was not putting in enough time as the Training Lieutenant and the operation of the Police Department suffered as a result." McNeil Aff. ¶ 14, ECF No. 31-3 at 4 (July 24, 2019). To address Chief McNeil's reliance on Captain Eannotti's assertions regarding Lieutenant Velez's alleged shortcomings, Lieutenant Velez relies on his own testimony, and focuses mainly on the lack of contemporaneous records documenting his shortcomings.

A lack of contemporaneous records, however, does not create a genuine issue of material fact that Lieutenant Velez's reassignment was pretextual when the Town has offered legitimate nondiscriminatory reasons for doing so, particularly when Lieutenant Velez concedes that he and his immediate supervisor did not agree on the approach to the job, as discussed further below. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was true and there was abundant and uncontroverted independent evidence that no discrimination had occurred." (citations omitted)); *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335-36 (2d Cir. 1997) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Any legitimate, non-discriminatory reason will rebut the

presumption triggered by the prima facie case." (citation omitted)); *see also McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 61 (2d Cir. 2018) (summary order) ("While an inference of pretext may arise where an employer's deviation from its procedures results in the challenged employment decision, the record here demonstrates no such deviation." (citing *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 313-14 (2d Cir. 1997)).

"[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). In response to the Town's legitimate and nondiscriminatory reason for firing him, Lieutenant Velez has not provided any record evidence that any decisionmaker discriminated against or harbored animus toward him because of his age or his race. *See Howe v. Town of Hempstead*, 2006 WL 3095819, at *7 (2d Cir. 2006) ("This connection [between discriminatory comments and an intent to discriminate] exists if the comments were made by the decision-maker or by someone who had great influence over the decision-maker."). Instead, Lieutenant Velez contends that his "adopt[ion of] his own methods and procedures for administering the operations of the Training Division" incurred "the enmity of Eannoti, as evidenced by his constant complaining to McNeil." Pl's Opp'n at 28.

But Lieutenant Velez does not allege that Captain Eannotti—or anyone, for that matter— harbored discriminatory animus towards him based on his race or age.[3] *See Burdine*, 450 U.S. at 256 ("The plaintiff retains the burden of persuasion. . . . to demonstrate that the proffered reason was not the true reason for the employment decision. . . . "). Lieutenant Velez's conclusory

---

[3] In fact, although the Town mentions Lieutenant Velez's reference of "several stray comments by McNeil" during his deposition, Def.'s Mem. at 22 ("Plaintiff acknowledged that he could not connect those comments years earlier to his reassignment."), Lieutenant Velez does not mention any comments made by Chief McNeil in his opposition. Lieutenant Velez describes past interactions with Chief McNeil as him making "sarcastic" remarks or "venting" about Lieutenant Velez's request for overtime, but he does not allege any connection to discriminatory animus on the basis of age or race to satisfy his burden of establishing pretext.

allegations that Chief McNeil's legitimate nondiscriminatory reason for firing him was pretextual are not supported by admissible evidence in the record. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment"); *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) (finding "insufficient" plaintiff's argument for his employment discrimination claims because he "has done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his race" (internal citations, quotation marks, and formatting omitted)).

As a result, other than Lieutenant Velez's speculation about the reason for his reassignment, there is no record evidence to support the notion that the Town's reasons for firing Lieutenant Velez were a mere pretext for age or race discrimination.

Accordingly, Lieutenant Velez's claims of age or race discrimination under the ADEA and Title VII will be dismissed.

### C.  The CFEPA Claims

Having dismissed all of Lieutenant Velez's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims, and dismisses them for lack of jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see, e.g.*, *Castellano v. Bd. of Tr.*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1991) ("[I]f the federal claims are dismissed before trial . . . , the state claims should be dismissed as well.").

## IV. CONCLUSION

For the foregoing reasons, the Town's motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of March, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE